DAVID LIEBERMAN, Appellant, *v.* THE TEMPLAR MOTOR COMPANY, Respondent.

Sales — contract — action to recover damages for breach of contract and for balance due under contract — Statute of Frauds — statute has no application where contract, though not to be completed within a year, is modified so that performance could be had within a year — facts examined and held that defendant may recover for unpaid balance due and damages for contract repudiated by defendant without justifiable reasons.

1. Those who make a contract may unmake it, or substitute another either wholly or partly inconsistent. The validity of the substituted contract must be determined, like that of any other, in the light of its situation existing at the hour of its making. If valid then, it will supersede or modify the first, to the extent that the two are unable to stand together.

2. A contract originally within the Statute of Frauds because not to be performed within a year, and then reduced to writing so as to be valid at its making, may be modified without a writing at a time when performance within a year is possible.

3. Plaintiff's assignor and defendant entered into a contract in writing for the manufacture by the former for the latter of a specified

number of automobile bodies at a specified price. There is testimony that at a conference between the parties the written contract was modified by word of mouth. Afterward, the president of defendant wrote to plaintiff's assignor that there was practically " no demand " for cars and that he wished to " arrange to stop production entirely, or limit production to a minimum." Thereafter he asked for cancellation of the contract. This plaintiff's assignor declined to do and upon refusal of payment by defendant brought this action. Two causes of action are stated in the complaint. The first for the balance said to be unpaid for bodies delivered to defendant's assignor, or ready for delivery. The second for damages resulting from the refusal of defendant to go forward with performance. Upon examination of the evidence it must be held that defendant might be found to have repudiated the contract,

4. The automobile bodies, owing to their special design, did not have an established market value. Damages include gains prevented. These are to be measured, when the test of market fails, by the difference between cost of performance and contract price. Damages include also losses sustained. These comprise payments for labor and material, reasonably made in part performance of the contract, to the extent that they are wasted if performance is abandoned.

*Lieberman* v. *Templar Motor Company*, 202 App. Div. 136, reversed.

(Argued May 2, 1923; decided May 29, 1923.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 27, 1922, unanimously affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

*Emory R. Buckner, H. H. Nordlinger, Isidor Enselman* and *Samuel H. Hofstadter* for appellant. It was error to strike out the evidence of the conversation at the Hotel Pennsylvania authorizing completed bodies to be stored in Hudson's factory instead of in public warehouse. (Williston on Cont. § 1828; *Warren Chemical Co.* v. *Holbrook*, 118 N. Y. 586; *International Ferry Co.* v. *Am. Fid. Co.*, 207 N. Y. 350; *Kent* v. *Kent*, 62 N. Y. 560; *Doherty* v. *Doe*, 18 Colo. 456; *Blake* v. *Neils Lumber Co.*, 111 Minn. 513; *Donovan* v. *Richmond*, 61 Mich. 467; *Sherman Clay Co.* v. *Buffum & Pendelton*, 91 Ore. 352;

*William* v. *Moss' Empire, Ltd.*, [1915] 3 K. B. 242; *Blumenthal* v. *Bloomingdale,* 100 N. Y. 558; *Murray* v. *Boyd,* 165 Ky. 625; *Meyers* v. *Knights of Pythias,* 194 App. Div. 405; *Peerless Pattern Co.* v. *Meacham Co.,* 170 N. Y. Supp. 928; *Seymore* v. *Hughes,* 55 Misc. Rep. 248.) The failure of defendant to pay the invoices from July 23 to August 27, 1920, and the statement that they " would not pay a cent," constituted a breach of the entire contract. (*Flora* v. *Carbean,* 38 N. Y. 111; *Crane* v. *Powell,* 139 N. Y. 379; *Smith* v. *Kirtland,* 45 App. Div. 25; *Harris* v. *Eggleston,* 47 App. Div. 169; *Ewald* v. *Poates,* 107 App. Div. 242; *Kelley Lumber Co.* v. *Otselic Valley R. R. Co.,* 136 App. Div. 146; *Levy* v. *Louvre Realty Co.,* 222 N. Y. 14; *Helgar Corp.* v. *Warner's Features,* 222 N. Y. 449.) It is thoroughly well settled that the measure of damages for breach of a contract to receive and accept merchandise to be manufactured includes not only the profits which the plaintiff would have made had the contract been carried out, but also the expense incurred by the plaintiff for materials purchased and on hand less the value to him of such materials. The trial court, therefore, erred in excluding proof of the latter element of damage. (*Swain* v. *Schieffelin,* 134 N. Y. 471; *Oswego Falls Pulp & Paper Co.* v. *Stecher Lithograph Co.,* 215 N. Y. 98; *Todd* v. *Gamble,* 148 N. Y. 382; *Wakeman* v. *Wheeler & Wilson Mfg. Co.,* 101 N. Y. 205; *Devlin* v. *Mayor,* 63 N. Y. 8; *Hausman* v. *Buchman,* 189 App. Div. 597; *Goepel* v. *Kurtz Action Co.,* 179 App. Div. 687; *United States* v. *Behan,* 110 U. S. 338; *Chicago* v. *Greer,* 9 Wall. 726; *Kingman & Co* v. *Western Mfg. Co.,* 92 Fed. Rep. 486; *Goldstein* v. *Godfrey Co.,* 61 Misc. Rep. 64; *Masterton* v. *Mayor,* 7 Hill, 61.)

*Clarence Mellen* and *John Schulman* for respondent. The testimony concerning the conversation at the Hotel Pennsylvania, which is the basis of the alleged modification of the contract, was properly excluded. (*Hill* v.

*Blake,* 97 N. Y. 216; *Schultz* v. *Bradley,* 57 N. Y. 646; *Imperator Realty Co.* v. *Tull,* 228 N. Y. 448; Wood on the Statute of Frauds, 754, § 403; *Swain* v. *Seamens,* 9 Wall. 254; *Emerson* v. *Slater,* 22 How. [U. S.] 28; *Goss* v. *Lord Nugent,* 5 B. & Ad. 58; *Harvey* v. *Graham,* 5 Ad. & El. 61; *Hickman* v. *Haynes,* L. R. 10 C. P. 598; *Abell* v. *Munson,* 18 Mich. 306; *Bradley* v. *Harter,* 156 Ind. 499; *Grand Forks Lumber Co.* v. *McClure Logging. Co.,* 103 Minn. 471; *Warren* v. *Mayer Mfg. Co.,* 161 Mo. 112; *Reid* v. *Diamond Plate Glass Co.,* 85 Fed. Rep. 193.) The complaint does not allege nor does the evidence disclose a right of recovery upon the second cause of action of the amended complaint. (*Freeth* v. *Burr,* L. R. 9 C. P. 208; *Simpson* v. *Crippin,* L. R. 8 Q. B. 14; *Pordage* v. *Cole,* 1 Wm. Saund. 319; *Mersey Steel Co.* v. *Naylor,* 9 A. C. 434; *Cornwall* v. *Henson,* [1900] L. R. 2 Ch. 298; *Rhymney Ry. Co.* v. *Brecon, etc., Ry. Co.,* 83 L. T. 111; *Matter of Phœnix Bessemer Steel Co.,* 4 Ch. Div. 108; *Bloomer* v. *Bernstein,* L. R. 9 C. P. 588; *Bradley* v. *Bertoumieux,* 7 Vict. L. R. 144, 147; *Oaten* v. *Stanley,* 19 Vict. L. R. 553, 555.) No breach of the contract by the defendant was proven. (*Hayes* v. *Am. Bridge Co.,* 127 App. Div. 576; Moore on Facts, §§ 1256, 1274; *Taylor* v. *City of New York,* 208 N. Y. 432; *Heller & Bro.* v. *Continental Mills,* 196 App. Div. 7; 233 N. Y. 641.) Treating the first cause of action as one for goods sold and delivered, plaintiff failed to prove delivery of any merchandise which was not paid for. (*Boiko & Co., Inc.,* v. *Atlantic Woolen Mills, Inc.,* 195 App. Div. 207; *Economu* v. *Schwartz,* 198 App. Div. 723; *Funt* v. *Schiffman,* 115 Misc. Rep. 155; *Prager* v. *Scheff & Co., Inc.,* 107 Misc. Rep. 500; *Crown Electric Ill. Co.* v. *Chiariello,* 106 Misc. Rep. 511; *Miller* v. *Harvey,* 221 N. Y. 54; *Motley, Green & Co.* v. *Elmenhorst,* 142 App. Div. 830; *Pierson* v. *Crooks,* 115 N. Y. 539; *Steinhart* v. *Bingham,* 90 App. Div. 149; *Rosenstein* v. *Kasien Mfg. Co.,* 50 Misc. Rep. 345; Williston on Sales,

§§ 278, 469, 826.) The cost to the plaintiff, of either partial or complete performance, can never be a proper criterion for the determination of damages resulting from the breach of a contract. All that the plaintiff is entitled to is defendant's performance. His recovery should, therefore, be measured by the value to him of that performance. (3 Williston on Cont. §§ 1339–1341; *Swain* v. *Schieffelin,* 134 N. Y. 471; *Wakeman* v. *Wheeler & Wilson Co.,* 101 N. Y. 205; *U. S.* v. *Beehan,* 110 U. S. 338.)

CARDOZO, J. The Hudson Auto Body Corporation, plaintiff's assignor, made a contract on August 21, 1919, with the defendant, the Templar Motor Company, to manufacture automobile bodies for use in the defendant's cars. The contract is in writing. It calls for 2,500 bodies to be made according to a special design. Deliveries are to commence on December 1, and to continue at the rate of ten bodies a day. The price is to be $130 per body, F. O. B. freight cars, New York city. If railroad facilities are lacking, the bodies may be stored at the defendant's expense. The manufacturer is not to be held responsible for delay by reason of strikes or other causes not within its control.

The Hudson Company began work upon the bodies as soon as the defendant's specifications were complete. Delay ensued as the consequence of a strike, which started in October, 1919, and ended in February, 1920. Work was then renewed, and shipments were made in April, 1920, and at frequent intervals thereafter. Much inconvenience was caused, however, by the shortage of freight cars. The situation was the subject of a conference between the Hudson Company's representatives and those of the defendant held at the Hotel Pennsylvania in New York on May 19, 1920. There is testimony that at this conference the written contract of August was modified by word of mouth. The manufacturer offered to store the completed bodies free of cost in its

own rooms until freight cars were at hand, and thus to save the defendant the enormous loss resulting from storage in a public warehouse. A weekly invoice was to be forwarded showing the production of bodies for the week, and shipment was to follow as soon as cars could be procured. In return, the defendant's representatives agreed that when invoices were forwarded with the O. K. of their inspector, they would make payment at once, and in advance of delivery, for the bodies then completed. The Hudson Company, pursuant to this agreement, sent its invoices from week to week, though in many instances without waiting for the inspector's approval. They shipped the bodies by rail as facilities were offered, and transmitted to the defendant the bills of lading for the shipments.

By August 27, 1920, invoices had been sent to the defendant for 610 bodies. By August 30, all but three of these 610 bodies had been shipped, and bills of lading forwarded. The invoices from April 28 to July 16, inclusive, covering 420 bodies, were paid in full. The invoices from July 23 to August 27, covering 190 bodies, and calling for payments of $24,158.50, were paid in part. There was unpaid a balance of $16,358.50. As early as August 6 the defendant gave evidence of its unwillingness to go forward with the contract. On that day, its president, Mr. Bramley, wrote the Hudson Company that there was " practically no demand " for cars, and that he wished to " arrange to stop production entirely, or limit production to a minimum." Conferences followed. Mr. Bramley asked for cancellation. He said the defendant was not paying out any money to any one. The Hudson Company said that cancellation was impossible, and that its bills must be paid; but offered concessions. It offered to suspend production altogether if the defendant would pay the overhead charges during the period of suspension. The defendant refused. It offered to take trade acceptances for com-

pleted bodies if the banks would accept them, but the banks were unwilling. It offered to limit production to 25 cars a week, and this the defendant apparently approved, though continuing to disregard the invoices which steadily accumulated. On September 9, 1920, the Hudson Company's attorney went to Cleveland to find out why the invoices had not been paid, and if possible collect them. Bramley refused to pay. He said that the defendant had no money even for its payroll. He offered no other excuse. When told that the Hudson Company would sue, he said to go ahead. " The best thing your company can do is to file a petition in bankruptcy." This action followed in October, 1920.

Two causes of action are stated in the complaint. The first is for $16,358.50, the balance said to be unpaid for bodies delivered to the defendant, or ready for delivery. The second is for damages resulting from the defendant's refusal to go forward with performance.

We think the defendant's conduct on September 9, 1920, viewed in the light of earlier happenings, might be found by a jury to have been intended as a repudiation of the contract. The argument is made that the money was not due. The O. K. of the inspector, which was necessary only if payment was demanded before shipment, had not been placed upon the invoices. There is room for doubt whether some castings of trifling value were sent forward with the bodies. The defendant, however, did not put its refusal to pay on any of these grounds. There was not a word in any of the conferences about an invoice or a casting. Such defects, if they existed, could have been easily supplied (2 Williston on Contracts, §§ 743, 744; *Strasbourger* v. *Leerburger,* 233 N. Y. 55, 60; *Callanan* v. *Keeseville, A. C. & L. C. R. R. Co.,* 199 N. Y. 268, 284). There was an unexcused and definitive refusal to pay a dollar either then or in the future (*Helgar Corp.* v. *Warner's Features, Inc.,* 222 N. Y.

449). The refusal was couched in terms that were equivalent to a renunciation of performance. So, at least, a jury might interpret its significance.

The Appellate Division, conceding repudiation by the defendant, found the evidence insufficient on the side of the plaintiff to show ability and readiness to perform in accordance with the contract. The oral modification on May 19, 1920, was disregarded as ineffective under the Statute of Frauds. The plaintiff or his assignor was held to be in default when performance was tested by the contract as originally made. The test, we think, is inappropriate.

The contract of August 21, 1919, was one by its terms not to be performed within a year. That is the only reason why at the time of its making there was need of a written memorandum (Pers. Prop. Law [Cons. Laws, ch. 41], § 31). Deliveries beginning on December 1, and continuing at the rate of ten bodies a day, would cover a period of ten months from December 1, which would be more than twelve months from August 21. The contract was not one for the sale of goods, for the bodies were to be manufactured according to a special design, which belonged to the defendant and not to dealers generally (Pers. Prop. Law, § 85, subd. 2). Besides, there was part payment, and also acceptance and receipt. Except, therefore, for the element of time a writing was unnecessary. But on May 19, 1920, when the modification was adopted, performance could have been carried to completion in a time much shorter than a year. In such circumstances, the necessity for a writing no longer existed. A contract originally within the statute because not to be performed within a year, and then reduced to writing so as to be valid at its making, may be modified without a writing at a time when performance within the year is possible (*Williams* v. *Moss' Empires, Ltd.*, 1915, 3 K. B. 242; *Blake* v. *Neils Lumber Co.*, 111 Minn. 513, 516; *Sherman, Clay & Co.* v. *Buffum & Pendleton*, 91 Ore. 352, 355;

*Murray* v. *Boyd,* 165 Ky. 626, 631; *Donovan* v. *Richmond,* 61 Mich. 467; 1 Williston on Contracts, § 503, p. 988). The ruling in *Williams* v. *Moss' Empires, Ltd.* (*supra*) is criticized, but, we think, without foundation, in *Morris* v. *Baron & Co.* (1918, A. C. 1, 25, 26; cf. 1 Williston on Contracts, § 593, p. 1144, note). Those who make a contract may unmake it, or substitute another either wholly or partly inconsistent. The validity of the substituted contract must be determined, like that of any other, in the light of the situation existing at the hour of its making. If valid then, it will supersede or modify the first, to the extent that the two are unable to stand together. The contract of August 21 was in writing, and was, therefore, valid when made, though performance would extend beyond a year. The contract of May 19 was not in writing, but was also valid when made, since performance could be kept within a year. The one thus supplements the other. We add by way of caution that nothing here said is applicable to a situation where the modifying contract and the contract modified are subject to the same requirements of form, as in the case, *e. g.,* of a contract for the sale of lands (*Imperator Realty Co., Inc.,* v. *Tull,* 228 N. Y. 447).

Other avenues of reasoning lead to the same outcome. Assent to new terms of performance, even if invalid as a contract, will serve as an estoppel excusing what would otherwise be a default until assent has been recalled (*Imperator Realty Co., Inc.,* v. *Tull, supra; Harris* v. *Shorall,* 230 N. Y. 343, 349). The argument does not have to be elaborated in view of our ruling as to the application of the statute.

We hold, therefore, that a case was made out for the recovery of damages under the second cause of action upon the basis of a total repudiation of the contract. We have yet to consider the first cause of action, to recover for bodies completed while the contract was in force. The defendant argues that the plaintiff's proof

of performance is defective in failing to show that the bodies were supplied with castings. These are small metal sockets costing $1.75 a pair. The evidence in this respect is indeed unsatisfactory. We think that unexplained it suffices for a *prima facie* case. No doubt in connection with some of the early shipments, which were afterwards paid for, the failure to supply castings had been the subject of complaint and discussion. The failure was due to the inability of the Hudson Company to get them from the factory. Castings arrived from the factory in the latter part of May. There was no reason thereafter why they should not go forward with the bodies. The circumstantial evidence is strong that they did. The inspector notes their absence in connection with the invoices of May 6 and May 19. He makes no mention of a like omission upon invoices of later date. The defendant wrote a letter of complaint as late as May 28 referring to the shipment of May 19. We find no complaint thereafter. Eight invoices transmitted at various times between May 29 and July 16 were not only received without objection, but paid in full. Of the six invoices which are the subject of the first cause of action, the earliest is dated July 23 and the latest August 27. Payments were made upon account, and again without complaint. Even when the defendant refused payment in September, there was no suggestion that any omission on the part of the shipper was the cause of the refusal. We think the cumulative force of these and other circumstances is sufficient to charge the defendant with a duty of explanation or denial. Finally, there is evidence from which a jury might draw the inference of an understanding that if bodies were shipped without castings, the defendant would supply the omission, and recoup the expense by a deduction from the price.

A question of the measure of damages arose upon the trial. Since it is almost certain to recur, a statement

of our views is proper. The bodies, owing to their special design, did not have an established market value. Damages, if recoverable, include gains prevented. These are to be measured, when the test of market value fails, by the difference between cost of performance and contract price (*Oswego Falls Pulp & Paper Co.* v. *Stecher Lithographic Co.*, 215 N. Y. 98). Damages include also losses sustained. These comprise payments for labor and material, reasonably made in part performance of the contract, to the extent that they are wasted if performance is abandoned (*Chicago* v. *Greer*, 9 Wall. 726, 732; *U. S.* v. *Behan*, 110 U. S. 338, 344; *U. S.* v. *U. S. Fidelity & Guaranty Co.*, 236 U. S. 512, 525; *Meyer Bros. Drug Co.* v. *McKinney*, 137 App. Div. 541; 203 N. Y. 533).

The judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

HISCOCK, Ch. J., POUND, McLAUGHLIN and CRANE, JJ., concur; HOGAN, J., concurs in result; ANDREWS, J., absent.

Judgments reversed, etc.