ZANNIS *v.* FREUD HOTEL CO.

1. FRAUDS, STATUTE OF—ORAL MODIFICATION OF LEASE REQUIRED TO
   BE IN WRITING—TENANCY FROM YEAR TO YEAR.
   Oral modification of 10-year lease, by allowing lessees to occupy
   more space than lease calls for, thus releasing lessor from
   necessity of making expensive alterations in premises, is not
   void under statute of frauds (3 Comp. Laws 1929, § 13411),
   but is valid as oral lease from year to year.

2. SAME—ESTOPPEL—ORAL CONTRACT.
   Lessees accepting benefits of oral modification of 10-year lease
   are estopped ·from claiming modification was void under stat-
   ute of frauds (3 Comp. Laws 1929, § 13411).

3. SAME—ORAL MODIFICATION OF LEASE REQUIRED TO BE IN WRITING.
   Oral modification of 10-year lease comes within statute of frauds
   (3 Comp. Laws 1929, § 13411).

4. SAME—ESTOPPEL—ORAL CONTRACT.
   While agreement required by statute of frauds to be in writing
   may not be substantially altered by verbal agreement, parties
   may not accept benefits from such alteration and then claim
   that transaction is void.

5. PARTNERSHIP—MODIFICATION OF LEASE—SCOPE OF DUTIES.
   Partner active in business was acting within scope of his duties
   in agreeing to modification of lease whereby partnership se-
   cured considerably more space than called for in the lease
   without payment of additional rent, and lessor was released
   from making expensive alterations (2 Comp. Laws 1929,
   § 9846).

6. APPEAL AND ERROR—EVIDENCE—ADMISSIONS.
   Error, if any, in rejecting exhibit showing defendant's losses
   prior to entering into lease with plaintiffs was not prejudicial,
   where defendant admitted business had been very unprofitable.

7. SAME—OBJECTIONS—SAVING QUESTION FOR REVIEW.
   Error, if any, in excluding exhibit may not be considered, on
   appeal, where no objection was made at time of exclusion.

---

As to effect of statute of frauds upon the right to modify by
subsequent parol agreement, a written contract required by the
statute to be in writing, see annotation in 17 A. L. R. 10; 29
A. L. R. 1095.

8. LANDLORD AND TENANT—BREACH OF LEASE—DAMAGES.

Lessees, in action for damages for breach of lease, are not entitled to recover for equipment consisting of dishes, glassware, etc., which was removable and remained their property.

9. SAME—COST OF REPAIRS—DAMAGES.

In order for tenant to recover for cost of repairs and alterations, there must be distinct agreement on part of landlord to pay for them.

10. SAME—QUANTUM MERUIT—BREACH OF LEASE—DAMAGES.

Lessees are not entitled to recover on *quantum meruit* for cost of equipment, repairs, and alterations, where lessor did not breach lease, although lease provided that lessor would pay therefor if it terminated lease.

Appeal from Wayne; Jayne (Ira W.), J. Submitted October 22, 1931. (Docket No. 195, Calendar No. 34,184.) Decided January 4, 1932.

Assumpsit by John S. Zannis and William D. Pias, copartners doing business as Wolverine Hotel Restaurant, surviving John S. Zannis, James E. Miller, and William D. Pias, against Freud Hotel Company, a Michigan corporation, for breach of a lease. Verdict and judgment for defendant. Plaintiffs appeal. Affirmed.

*Frank C. Sibley* and *Oscar A. Kaufman*, for plaintiffs.

*Schueler & Freud* (*Oscar A. Markus*, of counsel), for defendant.

BUTZEL, J. Defendant, Freud Hotel Company, a Michigan corporation, owned and operated the Wolverine Hotel, located at the northwest corner of E. Elizabeth and Witherell streets in Detroit. It has a wide entrance on Elizabeth street in the center of the building. In December, 1924, the dining room

occupied approximately the easterly one-third of the ground floor. It faced Witherell street, and also that part of the Elizabeth street front east of the entrance. A large room in the rear of the ground floor also opened into the dining room. There were steps leading from this room to the basement below, where the kitchen was located. In addition to the foregoing, there was a large and separate coffee shop fronting on Elizabeth street at the southwest corner of the building. Its entrance was from the hotel lobby. Food was brought to the coffee shop by a dumb waiter from a separate kitchen in the basement. Defendant had run the dining room and coffee shop at a loss.

John S. Zannis, one of the plaintiffs, an experienced restaurateur, met Marcus Freud, president of the defendant corporation, who tried to interest him in taking over the food vending privileges of the hotel. Zannis emphasized the necessity and economy of combining the two kitchens into one, locating it on the ground floor of the building in the rear of the dining room, and moving the coffee shop to a space in front of the dining room, thus very materially curtailing the size of the dining room. Zannis associated himself with William D. Pias and John E. Miller, also experienced in the restaurant business. They formed a copartnership under the firm name of the "Wolverine Hotel Restaurant." Zannis and Pias, as plaintiffs, appear as "survivors" of this copartnership. Evidently they are the successors. The copartnership, as lessee, entered into a 10-year written lease with defendant as lessor. It provided for a fixed minimum rental of $600 per month the first three years, and $700 per month thereafter; also for a percentage of the gross sales each month, the fixed minimum to be deducted from

the amount due for the percentage, if larger. The leased space as shown by the drawing attached to the lease included the entire hotel dining room, the adjoining room, and its kitchen. It did not include the separate space used for the coffee shop. Defendant, however, agreed that the coffee shop space might be used without any additional rental up to January 15, 1925, at which time the lessee was to transfer all of the equipment therein to a coffee shop to be partitioned off from the front of the dining room. Defendant agreed, at its own expense, to erect two partitions and a plate glass window in the dining room looking out into the lobby of the hotel, and to construct two separate entrances to the coffee shop when moved, one directly from Elizabeth street and the other from the entrance to the lobby. An Elizabeth street entrance would necessitate cutting through the outer wall of the building at a considerable expense. The lease further provided for its termination by defendant at any time by a 90-day written notice and on payment to the copartnership of all sums expended by them for "improvements," and the additional sum of $25,000 as liquidated damages if the lease were terminated during the first three years of the term, and reduced amounts thereafter. The lease contained a clause stating that all verbal agreements, representations, etc., were embodied therein.

For a time after the lessee took hold, the business flourished. The entire space of the dining room was required to accommodate patrons. The kitchen was moved from the basement to the rear of the dining room, and defendant built a partition in accordance with the lease. When January 15, 1925, approached, with the obligation on the part of the lessee to move the coffee shop to the front of the dining room space,

Miller requested that the old layout be not disturbed and that the location of the coffee shop remain where it had been. Defendant at first demanded additional rental of $200 per month for the coffee shop space which the copartnership would no longer be entitled to under the lease. Finally an agreement was reached, but not reduced to writing, that the lessee should have the right to use the old coffee shop space without the payment of any additional rental for the balance of the term of the lease. The lessee thus enjoyed the use of the coffee shop space, not included in the lease, together with the entire dining room space. This obviously made it unnecessary to make the alterations that would have been required had the coffee shop been moved. The business continued to prosper for a time.

Miller and Pias were active in the business. Pias decided to make a hurried visit to Greece, but his return was delayed for over a year. Upon his departure, Zannis became more active in the business. It began to decline, and differences arose. Zannis demanded that defendant make the other alterations provided for in the lease, and presented a new plan differing essentially from that set forth in the lease. In April, a letter was sent to Pias in Greece, stating that Zannis was planning to move the coffee shop into the dining room, etc., and was insisting on the changes, and Pias was asked to give his ideas in regard to the changes. He cabled defendant, "Don't do anything until I get back." He testified that his cable meant that the plans set forth in the lease were not to be changed until his return. Miller corroborated defendant's testimony that it was agreed that the coffee shop was not to be moved. Miller further testified that the installation of a steam table, evidently for permanent use, in the old coffee

shop, showed that the copartnership expected to use this space for a long period of time. The testimony in regard to the modification of the lease is conflicting, but was fairly submitted to the jury, who decided in defendant's favor.

The copartnership continued in possession of the coffee shop space until May 13, 1925, when a peremptory demand was made by Zannis, on behalf of the firm, that defendant make the alterations at once. The demand not being complied with, the copartnership abandoned the premises and subsequently brought the instant suit. In the declaration and bill of particulars, plaintiffs demanded $10,388.84, the sum expended for equipment and remodeling of the premises; an additional amount of $1,986.99 for replacements; $125,000 for profits based upon the amount they made at the beginning of the lease before defendant's refusal to make repairs, and the further sum of $25,000, the stipulated damages provided for in the lease in the event of its termination by defendant during the first year of the term. Defendant denied plaintiff's right to recovery. It also claimed a set-off which it later withdrew. The jury brought in a verdict of no cause of action. We shall only discuss the questions involved as set forth in the briefs.

The first question presented is whether the statute of frauds (3 Comp. Laws 1929, § 13411) prevents a subsequent oral modification of a written lease when such modification has been acted upon. In the instant case the consideration for modification received by the copartnership and acted upon consisted of its use and occupation of the coffee shop space from January 15, 1925, until on or about the middle of May, 1925, without payment of any additional rent, and, further, the agreement that the

copartnership might continue to so use it for the balance of the term of the written lease. It is claimed, however, that this agreement not being in writing is a *nudum pactum*, and, therefore, unenforceable. The agreement was valid as an oral lease from year to year. In *Brant* v. *Vincent,* 100 Mich. 426, under a somewhat similar state of facts, the court said:

"It is argued, on behalf of the complainant, that there was no annual rent reserved, and therefore, even under the defendant's evidence, the agreement constituted a tenancy at will. It is true that 'the reservation of an annual rent is the leading circumstance that turns leases for uncertain terms into leases from year to year.' * * * But clearly this rule is not applicable to a parol tenancy for years, void under the statute, where the entire rent has been paid in advance. Under the defendant's evidence he had a lease which, if reduced to writing, would have been valid for five years. He entered into possession of the term. We think there is no well-considered authority holding that he was not a tenant from year to year. The fact that no annual rent is reserved is not conclusive of the character of the tenancy. Where the owner of a farm rented a portion of it by parol for four years, the lessee agreeing to inclose the premises with a fence by way of rent, it was held that a tenancy from year to year was established."

To like effect is *Koschnitzky* v. *Hammond Lumber Co.,* 57 Wash. 320 (106 Pac. 900).

We further base our conclusions on the fact that, had defendant claimed such verbal lease to be void under the statute of frauds, it would have been estopped for the same reason that we determine that plaintiffs are estopped from so claiming. The facts of the case, as confirmed by the verdict of the jury,

establish the fact that a consideration was received and acted upon by each of the parties for the modification of the written lease. There is no question but that the modification itself comes within the statute of frauds, it being an oral change of a written lease. *Abell* v. *Munson*, 18 Mich. 306 (100 Am. Dec. 165). While the law of this State has consistently held that an agreement required by the statute of frauds to be in writing may not be substantially altered by a verbal agreement, it has also held that parties may not accept the benefits from such alteration and then claim that the transaction is void. In *Barton* v. *Gray*, 57 Mich. 622, we said:

"There was no valid contract to postpone performance, and the evidence was only relevant to show that such postponement was at the defendant's request, by which he was estopped to deny performance during that time. *Cummings* v. *Arnold*, 3 Met. (44 Mass.) 486 (37 Am. Dec. 155); *Hickman* v. *Haynes*, L. R. 10 C. P. 598. * * * No person can complain of an injury caused by the act or conduct of a party to which he has consented; and no one who causes or sanctions the breach of an agreement can recover damages for its nonperformance. * * * There can be no doubt but that a waiver of performance, or an agreement to extend the time of performance of a condition precedent, is equivalent to a performance thereof at the stipulated time."

In *Smiley* v. *Barker*, 28 C. C. A. 9, 11 (83 Fed. 684, 686), the court said:

"Conceding that parol agreements modifying written contracts that are within the statute of frauds are themselves within that statute, and cannot be enforced (citing cases), * * * we are still of the opinion that the court rightfully received this evidence on another ground. * * *

"The statute of frauds may not be used to perpetrate a fraud. One cannot take advantage of his own wrong. One may not so speak and act as to knowingly induce another to change his position, and then avail himself of that change to his prejudice."

The question has frequently arisen in other States. In *Hecht* v. *Marsh,* 105 Neb. 502 (181 N. W. 135, 17 A. L. R. 1), the court said:

"There is no reason, in our opinion, why a party to a contract within the statute of frauds may not be estopped by his conduct from disputing a subsequent oral modification of it to the same extent as a party to any other contract. It is a principle of equity, superior to any technical or artificial legal rules, which takes effect whenever the assertion of such a rule would result in perpetrating or ratifying a fraud."

In the annotation to *Hecht* v. *Marsh, supra,* in 17 A. L. R. 1, 39, and also to *Lieberman* v. *Templar Motor Co.,* 236 N. Y. 139 (140 N. E. 222), in 29 A. L. R. 1089, 1097, cases bearing on this subject are assembled. Some of them uphold such oral modification on the theory of estoppel, others on account of waiver, and still others on account of the fact that the statute of frauds is for the purpose of preventing a fraud and not perpetrating one, and thereby freeing one from obligations for which he has received a consideration. While the precise question in its identical form has not been passed upon by this court, the theory of estoppel has been frequently recognized and parties have not been permitted to escape their obligations when they have stood by and acquiesced or received a consideration from contracts that they subsequently seek to avoid because they do not conform with the statute of frauds.

*Stevens* v. *DeBar*, 229 Mich. 251; *Johnson* v. *Becker*, 251 Mich. 132; *Eisenberg* v. *Battenfeld Oil Co.*, 251 Mich. 654; *Colonial Theatrical Enterprises* v. *Sage*, 255 Mich. 160; *Spitzley* v. *Holmes, ante,* 559.

Plaintiffs further claim that Miller, on behalf of the copartnership, had no authority to enter into an agreement modifying the original lease. The uniform partnership act (2 Comp. Laws 1929, § 9849) states:

"Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no authority."

Miller, a member of the copartnership, was constantly on the premises, was looking after the business of the firm, and naturally was presumed to act in its behalf. From the facts in the case, it would appear that he was acting within the scope of his duties when in the interests of the firm he secured, without any additional rental, the large amount of space that the business at the time required.

Further error is claimed because plaintiffs were not permitted to introduce an exhibit consisting of a statement of losses of defendant prior to the entering into the lease. Even if there was any merit to this claim, it was nonprejudicial. Defendant admitted that the business had been very unprofitable. Error is claimed because the court excluded another exhibit. No objection was made at the time. It will not be considered now.

Further error is claimed on account of the court's refusal to charge the jury that plaintiffs might recover on a *quantum meruit* for the amount expended by them for repairs and alterations and equipment. They could not recover for equipment consisting of dishes, glassware, tableware, etc., that they bought and which remained their property as far as the record shows. An examination of the lease shows no agreement on the part of the lessor to pay for the alterations or repairs made by lessees. In order for a tenant to recover for the cost of repairs and alterations, there must be a distinct agreement on the part of the landlord to pay for them. *Leslie* v. *Smith,* 32 Mich. 64, 67; *Wolf* v. *Holton,* 92 Mich. 136, 139. This is not a case where a party had furnished labor or materials, or both, under contract which he has been prevented from completing. The lease does provide that if lessor terminates the contract it must pay the lessees for the amount expended for equipment, repairs, and alterations. Plaintiffs sued for this and other amounts in the present case. The verdict of the jury, however, establishes the fact that defendant did not breach the contract, and plaintiffs could not recover on the *quantum meruit* count in their declaration.

The judgment in favor of defendant is affirmed, with costs.

Clark, C. J., and McDonald, Sharpe, North, and Fead, JJ., concurred with Butzel, J. Potter and Wiest, JJ., concurred in the result.