PENSION BENEFIT GUARANTY CORP., In re Vesely Company/Thumb Area Industries—UAW Local 213 Group Pension Plan, Plaintiff,

v.

Dennis BEADLE, Joseph Kababik, Gene Peplinski, Holger Rasmussin, William Ward, Watkins Ross & Co., John Doe and Richard Roe, Defendants.

Civ. A. No. 86–30074 PH.

United States District Court,
E.D. Michigan, S.D.

April 11, 1988.

On Plaintiff's Motion for
Summary Judgment May 23, 1988.

Gary M. Ford, General Counsel, John H. Falsey, Deputy General Counsel, Bernard P. Klein, Mark Blank, David F. Power, Pension Ben. Guar. Corp., Washington, D.C., Elizabeth J. Larin, Asst. U.S. Atty., Detroit, Mich., for Pension Benefit Guar. Corp.

Jordan Rossen, M. Jay Whitman, Detroit, Mich., for defendants Beadle and Ward.

Thomas H. Bergh, Jack M. Schultz, Southfield, Mich., for defendant Kababik.

Charles R. Tuffley, John N. Thompson, Jr., Denenberg, Tuffley, Bocan, Jamieson, Black, Hopkins & Ewald, Southfield, Mich., for defendants Watkins Ross, John Doe and Richard Roe.

Dan W. Chandler, Cross, Wrock, Miller & Vieson, Detroit, Mich., for defendant Peplinski.

Holger Rasmussen, in pro per.

## MEMORANDUM OPINION AND ORDER

JAMES HARVEY, District Judge.

The Pension Benefit Guaranty Corporation (PBGC) brings this action pursuant to Title IV of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1301 *et seq.*, (1985 Supp.1987), for a decree confirming the termination of the Vesely Company/Thumb Area Industries–UAW Local 213 Group Pension Plan (Plan) on June 27, 1982, and the appointment of PBGC as statutory trustee of the Plan. The PBGC also seeks, on behalf of the Plan and in its own right, to recover damages against Watkins Ross & Co. and several of its employees (Watkins Ross) for negligence, gross negligence, breach of profes-

sional duty to the Plan and violation of Title IV of ERISA. This matter is now before the Court on defendants' motion to dismiss and for summary judgment.

## I.

Plaintiff PBGC is a wholly-owned United States Government corporation established under 29 U.S.C. § 1302 to administer the pension plan termination insurance program created by Title IV of ERISA. The PBGC becomes trustee of pension plans covered by Title IV which terminate and which do not have sufficient assets to pay for pension benefits guaranteed under Title IV. The PBGC guarantees the payment of such benefits. Defendant Vesely was a Michigan corporation with its principal place of business in Lapeer, Michigan. Effective January 1, 1976, the Plan was established by Vesely and Local 213 of the International Union, United Automobile, Aerospace & Agricultural Workers of America, an unincorporated association. The Plan is a defined benefit plan covered by Title IV of ERISA, and has been determined by the Internal Revenue Service to be tax-qualified under the Internal Revenue Code.

Plaintiff alleges in its complaint that in late 1981, Vesely ceased business operations, laid off all plan participants, and dissolved under Michigan law. Plaintiff maintains that although the Joint Board of Administration (Joint Board) as Plan Administrator of the Plan within the meaning of 29 U.S.C. § 1301(a)(1), directed termination of the Plan in May or June of 1982, no Notice of Intent to Terminate (Notice) required by 29 U.S.C. § 1341(c) was received by PBGC notifying it of the termination. On December 3, 1984, a belated Notice was received from the Joint Board, and pursuant to 29 U.S.C. §§ 1342(c) and 1348, the Joint Board and the PBGC retroactively agreed to June 27, 1982, as the date of termination of the Plan and to the appointment of the PBGC as statutory trustee of the Plan.

In Count I of its complaint, the PBGC seeks a decree pursuant to 28 U.S.C. § 2201, that the PBGC has been appointed statutory trustee of the Plan under 29 U.S.C. § 1342(c), and that the Plan terminated on June 27, 1982. As an alternative to Count I, in Count II the PBGC requests the Court to order the Plan terminated as of June 27, 1982, and appoint the PBGC statutory trustee of the Plan because the value of the assets of the Plan are insufficient to pay the benefits promised by the Plan and guaranteed under Title IV. In Count III and IV, the PBGC seeks to hold Watkins Ross, an actuarial firm serving as Plan Administrative Agent under section 1.21 of the Plan, liable for the deterioration of the assets of the Plan from June 27, 1982, to December 3, 1984. The PBGC maintains that although the Joint Board executed four copies of the proposed Notice transmitted to the Board by Watkins Ross for execution, and by letter dated June 17, 1982, directed Watkins Ross to file the executed Notice with the PBGC, Watkins Ross never filed the Notice. PBGC further contends that from time-to-time between mid–1982 and mid–1984, Watkins Ross falsely reported to the Joint Board that the PBGC was processing the executed Notice. In Count III, the PBGC alleges breach of a contract for pension plan administrative services between Watkins Ross and the Joint Board, gross negligence, and breach of Watkins Ross' professional duty to the Plan. In Count IV, the PBGC alleges that Watkins Ross breached its delegated duty under 29 U.S.C. § 1341 to file the Notice.

## II.

Although Watkins Ross brings its motion under both Rule 12(b)(6) and Rule 56, because matters outside the pleadings are presented, the Court will treat the entire motion under Rule 56. *See* F.R.Civ.P. 12(b)(6).

The Sixth Circuit recently restated the standard for ruling on a motion for summary judgment.

A motion for summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The

Supreme Court recently stated: "The inquiry [is] whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). *Conklin v. Lovely,* 834 F.2d 543, 546 (6th Cir.1987). Of course, in ruling on defendants' motion "the evidence together with all inferences must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.1979).

Watkins Ross does not contest Counts I or II in its motion, but contends that it is entitled to summary judgment on both Counts III and IV. With respect to Count III, Watkins Ross first contends that the PBGC lacks standing to bring an action for breach of contract against Watkins Ross since Watkins Ross' only contract was with the Joint Board. The PBGC contends that principles of contract law are inapplicable in determining whether it has standing to sue for breach of contract in light of its authorization under 29 U.S.C. § 1342(d)(1)(B)(ii) to collect any amount due the Plan.

■ Absent any guiding authority to the contrary, the Court agrees that section 1342(d)(1)(B)(ii) grants the PGBC broad powers in order to enable it to collect amounts due the Plan, including the right to enforce contracts such as the one between the Plan and Watkins Ross. The PBGC will never be a party to a contract between a Plan and a firm or individual for pension plan administrative services, and to hold otherwise would severely deter the PBGC's efforts in collecting any amounts owed the Plan resulting from a breach of such a contract. This would, in effect, insulate the entity providing administrative services from liability once the Plan is adjudicated to be terminated under 29 U.S.C. § 1342. Accordingly, the PBGC is entitled to bring a breach of contract against Watkins Ross on behalf of the Plan. *Dill v. Wood Shovel & Tool Co.,* 80 L.R.R.M. 2445 (S.D. Ohio 1972) [available on WESTLAW, 1972 WL 795], relied on by Watkins Ross is inapplicable since it was decided in 1972, before the enactment of ERISA. Additionally, *Lieberman v. Templar Motor Co.,* 236 N.Y. 139, 140 N.E. 222 (1923), is completely irrelevant to this case.

Watkins Ross also contends that it did not breach its professional duty to the Plan. Citing 20 C.F.R. § 901.20, Watkins Ross contends that as actuaries, its only professional duty under ERISA was to timely file annual reports with the IRS. The PBGC counters that 20 C.F.R. § 901.31(b) makes clear that section 901.20 is not an exhaustive list of the actuary's "duties under ERISA," and that 29 C.F.R. § 2616.3(b) governing the filing of a Notice of Intent to Terminate a pension plan is also applicable. Section 2616.3(b) provides in relevant part that, "[t]he plan administrator, as defined in section 3(16) of [ERISA], or a duly authorized representative acting on behalf of the Plan Administrator, shall sign and file the Notice."

■ Although section 2616.3(6) describes the procedure which a representative acting on behalf of a Plan Administrator must follow in submitting a Notice, it does not purport to bestow upon the representative the responsibility of filing the Notice. Whether the responsibility of filing the Notice is delegated to the representative depends on other factors such as the terms of the contract between the Plan Adminstrator and its representative or other communications between the two parties. When, based upon these other factors, it is shown that the responsibility of filing the Notice has, in fact, been delegated by the Plan Administrator to an authorized representative, the authorized representative must certainly be held responsible for filing the Notice in accordance with the procedures outlined in section 2613.3. Having concluded that the PBGC may assert a claim for breach of contract against Watkins Ross for failing to file the Notice, and because the PBGC may ultimately succeed on this claim, the PBGC is entitled to allege a claim of "breach of professional duty" under section 2613.3 for failure to file the

Notice.[1] Accordingly, summary judgment on the PBGC's claim of breach of professional duty is unwarranted at this time.

▮ Turning to Count IV, Watkins Ross contends that the alleged delegation by the Joint Board of its duty to file the Notice as required under 29 U.S.C. § 1342(a) was not set forth in the Plan itself as required by 29 U.S.C. § 1102 and is, therefore, not binding. Section 1102(b)(2) provides:

Every employee benefit plan shall—

     *    *    *    *    *    *

(2) describe any procedure under the plan for the allocation of responsibilities for the operation and administration of the plan....

The Court agrees with the PBGC that section 1102(b)(2) does not require a description of the exact services to be delegated. Nevertheless, the Court finds no basis in the statute for extending liability to delagees of the Plan Administrator. Although Watkins Ross may have failed to perform its obligation under the contract and thus breached the contract, and although Watkins Ross may have failed to properly follow the procedures set forth in 29 C.F.R. 2613.3 as an authorized representative, or failed to exercise due care, skill, prudence or diligence under 20 C.F.R. § 901.20 and thus breached its "professional duty", the obligation to file the Notice is clearly upon the shoulders of the Plan Administrator. The PBGC cites no statutory provision making the delagee vicariously liable for the failure to file the Notice. Accordingly, the statutory delegation claim in Count IV must be dismissed.

▮ Finally, Watkins Ross contends that it cannot be held liable for any post-termination insufficiency since 29 U.S.C. § 1344(c) places the burden of any loss in the value of the Plan's assets after the date the Plan is terminated upon the PBGC. As the PBGC correctly observes, section 1344(c) allocates post-termination gains or losses between the PBGC and the plan sponsor/employer or participants; it cannot be read to immunize a third party from

liability for post-termination losses arising from a breach of that party's contractual or professional obligations. To hold otherwise would create a loophole for permitting a breach of these contractual or professional obligations by a plan administrative agent after the date of termination and before the appointment of the PBGC as trustee. Accordingly, PBGC is not precluded from attempting to recover from Watkins Ross any post-termination decline in the assets of the Plan proven to have been caused by a breach of Watkins Ross' contractual or professional obligation.

## CONCLUSION

Count IV of the PBGC's complaint is DISMISSED. The remainder of Watkins Ross' motion is DENIED.

IT IS SO ORDERED.

## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on plaintiff Pension Benefit Guaranty Corporation's (PBGC) motion for summary judgment. The events giving rise to this action are summarized in the Court's April 11, 1988, Memorandum Opinion and Order granting in part defendant Watkins Ross & Co's (Watkins Ross) motion to dismiss and for summary judgment, and need not be repeated here.

In Count I and II of its complaint, plaintiff alleges alternative theories in support of its request that it be appointed statutory trustee of the Vesely Company/Thumb Area Industries—UAW Local 213 Group Pension Plan (Plan). In Counts III and IV, plaintiff seeks to recover damages suffered by the Plan as a result of Watkins Ross' failure to file a Notice of Termination (Notice) with the PBGC. Plaintiff alleges breach of contract and professional duty and gross negligence against Watkins Ross in Count III, and breach of delegated statutory duty against Watkins Ross in Count IV. In its previous order, the Court rejected Watkins Ross' contention that the PBGC

---

**1.** The allegations that Watkins Ross acted fraudulently in covering up their failure to file the

Notice is also sufficient to state a claim under 20 C.F.R. § 901.3(b) and (c)(1).

lacked standing to bring a breach of contract claim because it was not a party to the contract, as well as the argument that its only professional duty under ERISA is to file annual reports with the Internal Revenue Service. Accordingly, the Court denied Watkins Ross' motion with respect to these two claims. With respect to the breach of delegated statutory duty claim, however, the Court concluded that Watkins Ross was entitled to judgment as a matter of law. Finally, the Court concluded that Watkins Ross could be held liable for the decline in the Plan's assets as a result of the failure to timely file the notice of termination with the PBGC.

The motion filed by the PBGC is substantially similar to its response to Watkins Ross' motion, and contains several arguments which are no longer applicable in light of the Court's previous opinion which was issued after the PBGC's motion was filed. The only issues presented in the PBGC's motion not already decided in the Court's previous order are whether the PBGC should be appointed statutory Trustee of the Plan as requested in Counts I and II, and whether the PBGC is entitled to judgment as a matter of law on the breach of contract and professional duty and gross negligence claims contained in Count III.

## I.

Summary judgment is appropriate where no genuine issue of material fact remains to be decided and the moving party is entitled to judgment as a matter of law. *Willetts v. Ford Motor Co.,* 583 F.2d 852, 855 (6th Cir.1978); *Ghandi v. Police Dept. of City of Detroit,* 747 F.2d 338, 345 (6th Cir.1984); F.R.Civ.Pro. 56. In applying this standard, the Court must view all materials offered in support of a motion for summary judgment, as well as, all pleadings, depositions, answers to interrogatories, and admissions properly on file in the light most favorable to the party opposing the motion. *Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974); *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Smith v. Hudson,* 600 F.2d 60 (6th Cir.1979).

The party moving for summary judgment "bears the burden of clearly establishing the non-existence of any genuine issue of fact material to a judgment in his favor." *United States v. Articles of Device, Etc.,* 527 F.2d 1008, 1011 (6th Cir. 1976). If the moving party satisfies that burden, the opposing party must come forward with "specific facts showing there is a genuine issue for trial." *First National Bank of Arizona v. Cities Services Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1967), *reh. denied,* 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); *Ghandi v. Police Dept. of City of Detroit,* 747 F.2d at 345. Plaintiffs are not entitled "to get to the jury on the basis of the allegations in their complaints, coupled with the hope that something can be developed at trial...." *First National Bank of Arizona v. Cities Services Co.,* 391 U.S. at 289–90, 88 S.Ct. at 1593.

## II.

### A. Counts I and II

In Count I, plaintiff requests that the Court issue an order appointing the PBGC statutory trustee of the Plan under 29 U.S.C. § 1342(c), and declaring that the Plan terminated as of June 27, 1982, pursuant to 29 U.S.C. § 1348, based on an agreement between itself and the Joint Board— the Plan Administrator. In Count II, the PBGC alleges in the alternative that the Court should order the termination of the Plan and appoint the PBGC as statutory trustee as empowered in 29 U.S.C. § 1342(c), in order to protect the interest of the Plan participants and to avoid any unreasonable deterioration of the Plan's financial condition or any unreasonable increase in the PBGC's liability. Defendant contends that a valid agreement was never entered into between the PBGC and the Joint Board, but does not object to granting the relief requested by plaintiff in Count II.

Because of the incomplete nature of the agreement between the PBGC and the Joint Board, the Court concludes that summary judgment is inappropriate on Count I. No party having objected to Count II, how-

ever, and it appearing that the value of assets of the Plan are insufficient to pay for the benefits promised by the Plan, plaintiff is entitled to summary judgment on Count II.

## B. Count III

### *Breach of Contract*

The PBGC contends that it is entitled to judgment as a matter of law because Watkins Ross failed to file the Notice with the PBGC as required under the contract entered into between Watkins Ross and the Joint Board. The PBGC seeks to recover $56,100.00, the amount it calculates the Plan lost between June 1982, the month in which it alleges Watkins Ross should have filed the Notice, and December 1984, the month in which the Notice was ultimately filed by the Joint Board. Watkins Ross contends that plaintiff's motion is precluded by the Court's previous ruling that there are material issues of fact in dispute. Watkins Ross also maintains that plaintiff's motion is inconsistent because it is the same document filed by plaintiff in response to its own motion except that rather than indicating that there are questions of fact in dispute, it now alleges there are no questions of fact in dispute.

### 1.

The Court agrees that the PBGC's motion, because it is almost identical to its response to Watkins Ross' motion, makes resolution of the matter slightly difficult. The Court is also aware, however, that at the time plaintiff filed its own motion, the Court had not yet issued its opinion relative to defendant's motion, thus making it more difficult for the PBGC to determine what arguments to include in its own motion. Additionally, although some degree of inconsistency exists between PBGC's response to defendant's motion and its own motion, the inconsistency is minor and has no effect on the resolution of the issues left undecided in the Court's previous decision. Specifically, the Court did not, as Watkins Ross suggests, conclude that

whether Watkins Ross had breached its contract with the Joint Board is a material issue of fact in dispute. The Court limited its review to whether the PBGC has standing to allege a breach of contract claim; it did not discuss the substantive question of whether Watkins Ross was entitled to summary judgment on the contract claim since Watkins Ross did not raise the issue in its motion. Although in certain portions of its response the PBGC appeared to be arguing for summary judgment on its own behalf, PBGC's response was not a cross-motion for summary judgment, and whether the PBGC was entitled to summary judgment was not properly before the Court. The Court purposely awaited defendant's response to the PBGC's motion before reviewing whether the breach of contract claim involves a material issue of fact warranting a trial.[1] This issue is now, therefore, properly before the Court.

### 2.

■ The Court's primary task in construing a contract is to give effect to the parties' intention. *Central Jersey Dodge Truck Centers, Inc. v. SightSeer Corp.,* 608 F.2d 1106, 1109 (6th Cir.1979); *Klever v. Klever,* 333 Mich. 179, 186, 52 N.W.2d 653 (1952). The parties' intentions in making the contract may be ascertained by looking to the interpretation placed upon the contract by the parties' conduct. *Shelton v. Wilson,* 274 Mich. 433, 264 N.W. 854 (1936).

The undisputed evidence indicates that Watkins Ross was required under the contract to prepare and file the Notice with the PBGC. The contract, in part, required that Watkins Ross provide the following services:

> 2. To prepare or assist in preparation of all required documents for the Labor Department, Internal Revenue Service and the Pension Benefit Guaranty Corporation.

....

---

1. Although PBGC filed its Notice on March 15, 1988, Watkins Ross did not file a response until

April 27, 1988.

6. To prepare the necessary forms for Plan terminations, including computations of vested accrued benefits and consulting with the Internal Revenue Service and the Pension Benefit Guaranty Corporation.

Although neither of these provisions explicitly require Watkins Ross to *file* the Notice, that this was the intent of the parties is manifest by the conduct of the parties after Vesely Company ceased operations in late 1981. In the spring of 1982, the Joint Board directed Watkins Ross to take appropriate steps to terminate the Plan, and Watkins Ross prepared a Notice to be filed with the PBGC pursuant to 29 U.S.C. § 1341(a). By letter dated May 4, 1982, Bette J. Heeres, a consulting assistant with Watkins Ross, transmitted to Dennis Beadle, a member of the Joint Board, four copies of the Notice. The letter specified that three executed copies should be returned "to our office (*i.e.*, to Watkins Ross) for filing with the PBGC." The executed Notices were returned to Watkins Ross by Beadle in a letter dated June 17, 1982. The Notice was never filed with the PBGC by Watkins Ross.

All of these facts are consistent with the interpretation of the contract and the parties' course of dealing under which the pension professionals, Watkins Ross, as the contracting party familiar with the PBGC, would review the document to ensure that it had been properly executed and would transmit it to the appropriate addressee at the PBGC. There is no evidence that Watkins Ross instructed the Joint Board to file the Notice itself, or that upon receipt of the executed copies of the Notice Watkins Ross notified the Joint Board that the Joint Board should not expect Watkins Ross to file the Notice. In further support of this interpretation of the contract, David Nadeau, former consultant at Watkins Ross and for three years a member of the Watkins Ross "team" assigned to the Plan, stated during his deposition that the filing of the executed Notice was the responsibility of Heeres, the employee who transmitted the several copies of the Notice and to whom the executed copies were addressed by Beadle.

It is also undisputed that Watkins Ross never filed the executed Notice. The PBGC first learned of the Plan's intent to terminate on December 3, 1984, when the Joint Board itself, after learning that Watkins Ross had neglected to file the Notice, notified the PBGC. Watkins Ross proffers no valid reason why it failed to file the Notice. Although Executive Vice President Thomas Stanar speculated in a letter to Joint Board counsel Frank Cornelius dated December 6, 1984, that part of the reason why the Notice was not filed was probably because of missing documents, Watkins Ross should have attempted to obtain the missing documents and ensure that the Notice was filed. In any event, Stanar testified that he had no personal knowledge of the matter and admitted he was aware of no discernable reason why the Notice was never filed. At best, the uncontradicted evidence shows that the Notice was inadvertently forgotten by Watkins Ross based on the turnover in personnel, hardly an excuse for failing to perform its contracted services.

The undisputed evidence indicating that Watkins Ross failed to file the Notice as required under the contract, the Court finds that summary judgment should be granted on the breach of contract claim. The Court, therefore, need not reach the breach of professional duty and gross negligence claims.

Accordingly;

IT IS ORDERED that plaintiff's motion for summary judgment is DENIED as to Count I.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is GRANTED as to Count II, that the PBGC is appointed statutory trustee of the Plan under 29 U.S.C. § 1342(c), and that the Plan terminated on June 27, 1982, pursuant to 29 U.S.C. § 1348;

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is GRANTED as to Count III;

IT IS FURTHER ORDERED that plaintiff shall file with the Court no later than June 15, 1988, a brief outlining the amount

of damages incurred and the method of calculation. Watkins Ross shall then have fifteen (15) days, as determined under the Federal Rules of Civil Procedure, from the date of filing within which to file a response.