WEST, WEIR & BARTEL, INC., Appellant-Respondent, v. MARY CARTER PAINT COMPANY, Respondent-Appellant.

First Department, February 15, 1966.

*A. Walter Socolow* of counsel (*Max E. Lynne* with him on the brief), for appellant-respondent.

*Adelbert C. Matthews, Jr.,* of counsel (*Malvern Hill, Jr.,* with him on the brief; *Havens, Wandless, Stitt & Tighe,* attorneys), for respondent-appellant.

BREITEL, J. P. These are cross appeals from a judgment rendered after nonjury trial in an action for damages for wrongful termination of an advertising agency contract. Plaintiff is the successor by merger of an advertising agency, and defendant is a paint manufacturer which contracted for the advertising services. The trial court rendered a judgment in favor of plaintiff in the sum of $76,251.85, of which the only component in serious issue is the principal sum of $59,145 plus interest representing the trial court's evaluation of the damages sustained by reason of the breach of contract.

Defendant contends that it terminated the agency contract for justifiable cause and frustration of purpose, therefore disentitling plaintiff to any damage recovery for breach, and that, in any event, damages were improperly determined. Plaintiff contends that damages in the principal sum of $59,145 were

improperly determined and that it is entitled instead to a recovery of $188,791.43. It is concluded that the trial court correctly found on the issues of law and fact that a breach of contract had occurred, while, at the same time, on the issue of damages plaintiff is entitled to a recovery on a different basis than it received but nowhere in the amount claimed. In consequence, the judgment should be modified as indicated later.

The relevant events are as follows:

In 1961 defendant was interested in changing its advertising program. For some time it had conducted its own direct national advertising for itself and some 80 company-owned retail stores through a Florida advertising agency, coupled with a so-called co-operative plan whereby its approximately 600 franchised independent dealers operated their own local advertising programs for which, without monetary limitations, defendant reimbursed the independent dealers for one half of their advertising expenditures. Defendant solicited presentations from advertising agencies providing for a reconstitution of its advertising program with closer control of all advertising of its products, inclusive of that by dealers. Plaintiff's predecessor, Ellington & Company, submitted a presentation including a plan for centralized control of all defendant's advertising. On the basis of this presentation Ellington's bid was accepted. A written agency agreement was executed under which Ellington was to handle for the customary 15% commission all advertising ordered by defendant. The agreement was for one year beginning July 1, 1961 and was thereafter terminable on three months' notice by either party. Performance under the agreement ceased at the end of 1961, and the present action eventually followed.

The advertising plan suggested by Ellington provided for direct national advertising by defendant to the exclusion of the franchised independent dealers. The dealers were to be surcharged on their purchases to defray the cost of advertising substituted for local advertising. The plan was not incorporated into the written agency agreement. Nor was any reference made in the agreement to any minimum amounts of advertising or commissions, although prior to the execution of the written agreement defendant represented that a $2,000,000 advertising budget was contemplated.

Promptly after the Ellington agency was retained defendant expressed concern with too abrupt a change-over to the direct national plan. It was eventually agreed that only the western region of the country should be shifted over to "national control", and that as problems discovered in the shift-over were

resolved, national control would be instituted in the remainder of the country, the midwestern and eastern regions. The change-over was installed in the western region and produced disastrous results. While there was little, if any, criticism of physical advertising material prepared by Ellington, the independent dealers, with few exceptions, complained of a breakdown in the handling of local advertising campaigns for lack of familiarity with local market conditions and local advertising media. By December, 1961 defendant decided to abandon the national control plan and revert to its old system. It offered to continue Ellington as its advertising agency on direct national advertising. Because of the limited commissions it would receive from a national advertising budget on the old basis, Ellington declined this suggestion. By March, 1962 defendant in writing unilaterally declared the agreement terminated.

During the abortive change-over period covering the first half of the fixed term of the agreement (the second half of 1961) Ellington had prepared all or most of the physical advertising material whether used in direct national or local co-operative advertising. (This material, once distributed, was available to defendant and its independent dealers all through the balance of the fixed term of the agreement.) It billed for and received commissions only on nationally or centrally placed advertising, including that for the western region, totaling $271,599. This aggregated, after stipulated adjustments, to commissions of $36,445.22. During that period direct national advertising amounted to $86,000 and local co-operative advertising amounted to $529,800 (half of which was reimbursed to dealers by defendant). These figures and commissions were in contrast with Ellington's rosy expectations of a 15% commission on an annual advertising budget of $2,000,000.

For the second half of the fixed term of the advertising agreement (the first half of 1962) direct national advertising aggregated $115,700 and local co-operative advertising amounted to $557,200 (half of which was reimbursed to dealers by defendant). These figures represented a small increase over those for the previous half year.

For the one-year fixed term of the written agreement the aggregate advertising budget, local and national, was $1,474,299, more than a half million dollars short of the expected or hoped-for budget of $2,000,000. It is out of this discrepancy as well as the allocation between local and national advertising budgets that the disputes in this case over the amount of damages, if damages are allowable, arise. In this connection plaintiff asserts and put into evidence proof that its predecessor incurred

costs of $130,378.64 during the first half of the fixed term in performance of the agreement.[1]

On the question of breach of the agreement and the liability for damages there was a mixed question of law and fact properly resolved by the trial court.

Accepting the evidentiary facts established by both parties (but not necessarily their respective interpretations) it is evident, regardless of the terms of the original agreement however interpreted, that they later agreed that instead of a total and relatively abrupt change-over to the national plan there should be a phasing-in by first applying the plan to the western region and later to the two others. By practical construction of the parties in the actual billing and payment of commissions the liability for commissions was incurred during this period only as to directly placed national advertising (*Janos* v. *Peck,* 21 A D 2d 529, 535 [per EAGER, J.], affd. 15 N Y 2d 509; Restatement, Contracts, § 235, subd. [e]; 10 N. Y. Jur., Contracts, § 221). In legal effect, and by its own terms, this subsequent agreement and conduct was a modification, but one which subsisted only for the period in which, by agreement, it was in effect (*Lieberman* v. *Templar Motor Co.,* 236 N. Y. 139, 146–147 [per CARDOZO, J.]; Restatement, Contracts, §§ 407, 408; 17A C. J. S., Contracts, § 373). Consequently, plaintiff has no valid claim for commissions on local advertising placed during that first period or on the local reimbursements expended by defendant. That Ellington may have waived a possible claim to such commissions to accommodate a client or under the compulsion of not offending a client with which it hoped to do much future business is not the equivalent of economic duress, as it seems to contend (*Oleet* v. *Pennsylvania Exch. Bank,* 285 App. Div. 411, 414–415; 17 N. Y. Jur., Duress and Undue Influence, § 13). It, therefore, follows that the trial court was correct in not awarding any damages for breach for this first period.

Plaintiff's effort to claim damages on the basis of a prospective advertising budget of $2,000,000 must likewise fail. This representation was never one of fact but a statement, never established to be insincere, of an expectation (cf. *Banner* v. *Lyon & Healy,* 249 App. Div. 569, 571, affd. 277 N. Y. 570; 24 N. Y. Jur., Fraud and Deceit, §§ 36–37; see Restatement,

---

1. An examination of the record suggests that the make-up of some claimed expenses (primarily salary and general overhead apportionments) are not supportable. If it were necessary to reach the question, plaintiff might not have sustained its burden of proof as to some expenditures. (See, generally, *Lieberman* v. *Templar Motor Co.,* 236 N. Y. 139, 149, *infra*; Restatement, Contracts, § 333, *Comment d*; 5 Williston, Contracts [Rev. ed.], § 1363A, p. 3828.)

Contracts, § 474). Moreover, omission of so basic a representation from the written agreement bars proof under the parol evidence rule, assuming it were otherwise available to plaintiff (*Fogelson* v. *Rackfay Constr. Co.*, 300 N. Y. 334, 338–340 [per FULD, J.]).

On the foregoing reasoning plaintiff is not entitled to recover commissions on the aggregate actual expenditures by defendant and its dealers for advertising in the sum of $1,474,299 or on the expectation figure of $2,000,000. Hence, plaintiff may not recover on its maximum claims.

When however, by December, 1961, defendant elected to abandon the national plan as envisaged by the parties in making the original agency agreement, it could not do so without the consent of Ellington. This unilateral election was a breach. There is nothing in the record to show that the modification of 1961 was intended to or had any force beyond the phasing-in period, which, as it turned out, was confined to the second half of 1961. Defendant thereby became liable for damages for breach of the original agreement for the remaining period of the fixed term stipulated in the agreement. Measurement of the damages entailed by that breach raises the only serious difficulties in the case.

The trial court awarded plaintiff damages measured by the agreed commission of 15% of direct advertising disbursements by defendant for the breach period, consisting of the first half of 1962 (the second half of the fixed term of the agreement) and, in addition, 15% of the reimbursement by defendant to its independent dealers for local co-operative advertising. Restating the effect of this in the light of the figures earlier given, plaintiff was awarded 15%, or $59,145, based on a total of $394,300, consisting of $115,700 direct advertising disbursements and $278,600 defendant's reimbursement to its dealers. This award is the item referred to as the dubious component in the judgment at the very inception of this opinion.

The rule is well established that where it is speculative whether damages were sustained there may be no recovery. The fact of damage must be clearly established. On the other hand, once the fact of damage is established the aggrieved party may sustain his burden of proof on the amount of damage by proof on any reasonable basis. A wrongdoer will not lightly escape his responsibilities, it is often said, because of the victim's difficulties in establishing the amount of his damage. (*Dunkel* v. *McDonald*, 272 App. Div. 267, 270–271 [per COHN, J.], affd. on limited appeal 298 N. Y. 586; Restatement, Contracts, § 331, *Comment a.*; 13 N. Y. Jur., Damages, §§ 16–18.)

Plaintiff is entitled to be made whole, but made whole on the basis of full performance of its contract, not as originally made but as modified (*Wakeman* v. *Wheeler & Wilson Mfg. Co.,* 101 N. Y. 205, 209–213; Restatement, Contracts, § 329, incl. *Comments a* and *b*; 5 Williston, Contracts [Rev. ed.], §§ 1338–1339; 13 N. Y. Jur., Damages, § 38). Had the contract been performed during the breach period Ellington would have received its commissions on the aggregate of advertising expenditures, all of which under the contemplated arrangements would have been direct national advertising ordered through Ellington. The commissions would have covered Ellington's costs and, if there were a surplus over costs, its profits. The contract having been breached, plaintiff is entitled to commissions as thus computed less only any actual savings in costs Ellington did not expend because of the breach (Restatement, Contracts, § 335; 5 Corbin, Contracts, § 1038).

The fact that during the first half of the fixed term of the agreement Ellington may have expended more than it received in commissions is in part compensated by its recovery for commissions for the breach period without any deduction for costs previously but actually incurred. Beyond that, its failure to recover more of Ellington's costs is a consequence, either of Ellington having engaged upon a contract which had no prospect of profits but only losses, or of having agreed to a modification for the earlier period which permitted defendant to escape liability for commissions on the deviations from the national advertising plan. Consequently, by not allocating costs incurred during the earlier period over the breach period, given the fact of modification, plaintiff is in fact benefited, as a practical matter (cf. *Lieberman* v. *Templar Motor Co.,* 236 N. Y. 139, 149, *supra*).

This result is as it should be, because plaintiff is entitled to recover the benefit of full performance during the breach period, if it is to be made whole under the rules and under the facts of this case (*Spitz* v. *Lesser,* 302 N. Y. 490, 493–494; Corbin, *op. cit.,* § 1038, pp. 238–239, particularly the last paragraph in which Corbin analyzes the situation where there has been breach and part performance and there is no over-all allocation of costs). [2] The record establishes that most of the expenditures by Ellington were made during the earlier period. The physical product of its efforts in the form of advertising material was then distributed and continued to be available, and used, as

---

2. For an excellent and relevant analytical effort to rationalize the rules of damages in sales cases, see Harris, A Radical Restatement of the Law of Seller's Damages: New York Results Compared, 34 Fordham L. Rev. 23.

far as one knows, through the breach period. But plaintiff is not entitled on any view to recover Ellington's expenditures in performance of the contract in excess of the contract price (Restatement, Contracts, § 333, subd. [a]; Corbin, op. cit., § 1038, p. 239; Fuller and Perdue, Reliance Interest in Contract Damages, 46 Yale L. J. 52, 75–80).

The rarer case where a plaintiff is entitled to recover his costs rather than the contract value of full performance occurs when it is not possible to prove the contract value of full per-formance (Restatement, § 333, incl. Comments, but, cf., Corbin, op. cit., § 1031). That is not the situation here.

It is not possible to reconstruct precisely a past that never occurred, but it is evident that the contemplated national con-trol plan would have involved more than the amount actually expended in the breach period by defendant on direct advertis-ing. Moreover, it is highly likely that a national control plan, because it would be, in part, a substitute for local advertising, would at least have incurred approximately the advertising disbursements made locally, in addition to the direct national disbursements for advertising. (Certainly, the pre-agreement discussion of a $2,000,000 budget supports this conclusion, and goes beyond it.) It is reasonble, therefore, to assume that the total advertising budget for both local and national advertising in the breach period measures approximately the least amount of advertising that would have been carried under the national control plan, if the agreement had been performed to its full term. It would be, on the other hand, in the search for a more refined measure, much too speculative to assess the amount of any economies, or for that matter, any greater expenditures, in the substitution of local advertising by national control, if the national control plan had been in effect.

As the Court of Appeals has said repeatedly, there are no rigid rules for the fixation of damages. This difficult area, more than most, requires pragmatic adjustment of factors with the object of producing a result which makes an aggrieved plaintiff whole to the same degree as full performance would have availed him. The qualified approximation of damages above detailed would appear to meet the tests if practically viewed and practically applied. (E.g., Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 209–210, supra; Spitz v. Lesser, 302 N. Y. 490, 493–494, supra. See, also, for authorities cited, dissenting opinion by Mr. Justice Van Voorhis [now Judge] in Stanley Trading Co. v. Bensdorp, Inc., 278 App. Div. 641.)

Thus, on the views last discussed, plaintiff is entitled to recover, subject to cost adjustments, commissions on the gross

disbursements for local and national advertising during the breach period. This recovery is not allowed because any agreement entitled Ellington to commissions on advertising ordered by others than defendant, but because the aggregate of local and national advertising in the breach period is an approximate minimal or best available measure of what would have happened if the agency agreement had been fully performed. Again, restating the effect of this analysis in figures stated earlier, plaintiff, subject to cost adjustments, is entitled to 15% commission on the aggregate of local advertising in the amount of $557,200 and national advertising in the amount of $115,700, that is, $672,900, on which the commissions are $100,935, rather than the sum of $59,145 awarded by the trial court.

This last figure of $100,935 is subject, however, to a deduction. If Ellington had been permitted to perform it would have incurred expenses it was able to and did avoid once it knew of defendant's breach. Whatever costs Ellington incurred during the first half of the fixed term lay at its door, simply as a consequence of the profitableness or lack of it of the contract for the full term and because of the modification.[3] Consequently, plaintiff should be allowed as its damages $100,935 less the actual savings in costs during the breach period. This, unless the parties can stipulate the amount, requires an assessment of the damages at Trial Term in accordance with the rules stated in this opinion. Such an assessment should involve no more than a reconsideration, and perhaps only a recomputation, of the additional costs of performance, if performance had occurred, during the breach period.

Accordingly, the judgment in favor of plaintiff in the amount of $76,251.85 should be modified, on the law, and on the facts, to increase the component of damages in such judgment on the second, third, fourth and fifth causes of action in the principal sum of $59,145 to $100,935, less the actual savings in costs, and, unless the parties stipulate as to the agreed amount, the proceedings should be remanded to Trial Term to assess the component damages of $100,935 less such amount as may be established as deductible savings in costs not incurred by plaintiff's predecessor as a result of defendant's breach, in accordance with the rules stated in the opinion above, and the judgment

---

3. Plaintiff showed that Ellington saved costs attributable to the agreement during the second half of the fixed term (the breach period) by $44,858.01. This might, prima facie, constitute an item to be deducted from the figure of $100,935. But, the figure of $44,858.01 was offered as a derivative from an anticipated advertising budget of $2,000,000, rather than the actual one of $1,474,299, quite a different matter.

should otherwise be affirmed, with costs and disbursements of the appeal to plaintiff-appellant-respondent against defendant-respondent-appellant. Settle order.

RABIN, STEVENS and EAGER, JJ., concur; VALENTE, J., deceased.

Judgment in favor of plaintiff in the amount of $76,251.85 modified, on the law and on the facts, to increase the component of damages in such judgment on the second, third, fourth and fifth causes of action in the principal sum of $59,145 to $100,935, less the actual savings in costs, and, unless the parties stipulate as to the agreed amount, the proceedings are remanded to Trial Term to assess the component damages of $100,935 less such amount as may be established as deductible savings in costs not incurred by plaintiff's predecessor as a result of defendant's breach, in accordance with the rules stated in the opinion of this court filed herein, and the judgment is otherwise affirmed, with $50 costs and disbursements of the appeal to plaintiff-appellant-respondent against defendant-respondent-appellant. Settle order on notice.