[Cite as *Rockside-77 Properties, L.L.C. v. Partners Fin. Group, L.L.C.*, 2018-Ohio-4112.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No. 106613

# ROCKSIDE-77 PROPERTIES, L.L.C.

PLAINTIFF-APPELLEE

vs.

# PARTNERS FINANCIAL GROUP, L.L.C., ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED IN PART, REVERSED IN PART,
AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-855128

**BEFORE:** Kilbane, J., E.A. Gallagher, A.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** October 11, 2018

[Cite as *Rockside-77 Properties, L.L.C. v. Partners Fin. Group, L.L.C.*, 2018-Ohio-4112.]

**ATTORNEYS FOR APPELLANTS**

William Joseph Baker
John J. Roszczyk
Baker & Roszczyk, L.L.C.
175 Park Place
Chagrin Falls, Ohio 44022

**ATTORNEYS FOR APPELLEE**

Eric Weiss
Michael C. Cohan
Spencer E. Krebs
Cavitch, Familo & Durkin Co., L.P.A.
1300 East Ninth Street, 20th Floor
Cleveland, Ohio 44114

MARY EILEEN KILBANE, J.:

{¶1} Defendants-appellants, Partners Financial Group, L.L.C. ("Partners") and Peter Butler ("Butler") (collectively referred to as "defendants"), appeal from the trial court's decision awarding plaintiff-appellee, Rockside-77 Properties, L.L.C. ("Rockside"), $35, 574.44 in damages and finding Butler's personal guaranty is capped at $49,000. For the reasons set forth below, we affirm in part, reverse in part, and remand for the trial court to enter judgment that Butler's personal guaranty is capped at $6,000.

{¶2} Rockside is a commercial landlord who owns property located at 5005 Rockside Road in Independence, Ohio ("the property"). Partners was one of its tenants. In March 2010, Rockside and Partners entered into a commercial lease agreement wherein Rockside leased a portion of the property to Partners.[1] With regard to the payment of rent, paragraph 4, the lease provides:

A. RENT: Lessee [(Partners)] covenants and agrees to pay to Lessor [(Rockside)], at such place as [Rockside] may designate, as rent for said Premises for and during the term of this Lease, the following:

(a) base rent for the first two months of the term of this Lease shall be fully abated;

(b) for months 3-14, base rent in the amount of Fifty Thousand Two Hundred Forty-two and 50/100 Dollars ($50,242.50) per year, in equal monthly installments of Four Thousand One Hundred Eighty-six and 88/100 Dollars ($4,186.88) per month;

(c) for months 15-50, base rent in the amount of Sixty-three Thousand One Hundred Sixty-two Dollars ($63,162.00) per year, in equal monthly

---

[1]The lease was amended in April 2010. This amendment has no bearing on the matter before us.

installments of Five Thousand Two Hundred Sixty-three and 50/100 Dollars ($5,263.50) per month; and

(d) for months 51-62, base rent in the amount of Sixty-six Thousand Thirty-three Dollars ($66,033.00) per year, in equal monthly installments of Five Thousand Five Hundred Two and 75/100 Dollars ($5,502.75) per month;

each due in advance, on the first day of each calendar month during said term without deduction or setoff.   * * * If an installment of rent is not paid within ten (10) days of when due, or if any other payment required herein is not paid when due, then the [Partners] shall immediately pay to [Rockside] a late fee equal to five percent (5%) of the amount of the late payment as liquidated damages, such amount being stipulated to by [Partners] as the amount necessary to compensate [Rockside]  for [Rockside's] reasonable damages.   If [Partners] shall fail to pay any rent or other charges within ten (10) days of when due, such unpaid amounts shall bear interest at the rate of twelve percent (12%) per annum from the due date until paid.

{¶3}    Paragraph 5 of the lease, titled "Rent Adjustment," provided for rental obligations by Partners in addition to the annual base rent stipulated in paragraph 4. These additional rental adjustments include common area maintenance charges, real estate taxes, electricity, storage, and work orders.

{¶4}    The lease also contained a personal guaranty, which Butler signed.   At that time, Butler was the president and general manager of Partners.   By signing the personal guaranty, Butler agreed to guarantee the payment of rent to be paid by Partners and the performance by Partners of all the obligations required under the lease.   Butler also guaranteed to pay all of Rockside's expenses, including reasonable attorney fees incurred by Rockside in enforcing all obligations of Partners under the lease or in enforcing the guaranty.   The personal guaranty was limited to $60,000, but would be "decrease[d] by

$1,000 for every month" that Partners paid rent.[2]   The guaranty provides in pertinent

part:

PERSONAL GUARANTY

In consideration of the making of this Lease by [Rockside] with   [Partners] at the request of the undersigned and in reliance on this Guaranty, the undersigned hereby guarantees the payment of the rent to be paid by [Partners] and the performance by [Partners] of all the terms, conditions, covenants and agreements of the Lease the same as if the undersigned had executed this Lease as [Partners].  This personal guaranty shall be limited to payment of $60,000, which amount shall decrease by $1,000 for every month that [Partners] makes payment of rent under this Lease (by way of illustration, once 12 months of rent payments have been made the amount remaining on the guaranty shall be $48,000).  The undersigned promises to pay all [Rockside's] expenses, including reasonable attorneys' fees, incurred by [Rockside] in enforcing all obligations of [Partners] under the Lease or incurred by   [Rockside] in enforcing this Guaranty.

---

[2]The lease term expired on May 31, 2015.

{¶5} In June 2013, Partners fell behind in its rental obligations to Rockside. Unable to resolve their dispute over the outstanding amount of rental charges, Rockside commenced the instant action seeking collection from defendants on the amount owed under the lease.[3] Rockside brought a breach of contract cause of action against Partners, a breach of guaranty action against Butler, and unjust enrichment and promissory causes of action against both Partners and Butler. The matter proceeded to a bench trial, at which the following evidence was adduced.

{¶6} Prestige Management ("Prestige"), the property manager for the property, was responsible for handling all leasing related issues pertaining to the property, including billing, lease negotiations, and maintenance. Jeffrey Hullet, vice-president of Prestige, testified that Partners was routinely late on payments and failed to make the full payments due under the lease. Nancy Mitchell ("Mitchell"), controller of Prestige, handled billing, invoices, and accounting relating to the property. She issued invoices, calculated rent adjustments, late fees, and interest, and communicated with Partners regarding any issues or concerns relating to its lease invoices and payments. Mitchell testified that she recorded all payments made and all rental charges incurred by Partners throughout the duration of the lease in a computer-generated tenant ledger.

{¶7} In May 2015, Rockside met with Butler in order to discuss Partners' outstanding balance and arrange payments. During this meeting, Butler did not dispute

---

[3]Rockside filed its complaint against defendants on December 2, 2015, and amended its complaint on December 4, 2015

the amount due on principal rent payments, but questioned the calculation of interest after October 2013. Mitchell created different spreadsheets after this meeting to show Partners the amount of outstanding rental payments with adjusted late fees and without late fees and interest. Without including late fees and interest, Partners owed $18,998.20 as of May 31, 2015. With adjusted late fees, Partners owed Rockside $29,050.28.

{¶8} Thereafter, Partners remitted a check for $10,419.36 with the memo notation "final rent." Rockside, however, did not deposit the check. Partners then vacated the property at the end of the lease term.

{¶9} Partners paid Rockside $312,051.11 throughout the duration of the lease. At the time of trial, Mitchell recalculated interest and late fees to reflect the amount owed by Partners as $35,574.44.

{¶10} Mitchell further testified that of the 60 months that Partners was required to remit rental payments to Rockside, Partners failed to make timely or full payments 49 times and only made rent payments "pursuant to the lease terms" for 11 months. Mitchell testified that Butler is entitled to $11,000 of "burn off" from the $60,000 original cap on the personal guaranty for each month that full and timely payments were made. She testified that his personal guaranty was capped at $49,000.

{¶11} After the conclusion of trial, the court issued findings of fact and conclusions of law, finding in favor of Rockside. The trial court stated:

> 34. Pursuant to Paragraphs 4 and 5 of the Lease, [Partners] was obligated to make full rental payments by the first of each calendar month. Full rental payments include all charges listed on each invoice including

payment of base rent, late fees, interest, common area and maintenance charges, electric, storage, non-sufficient check fees, and work orders.

35. Thus, failure to pay the full amount due on each invoice by the first of each calendar month constitutes failure to pay rent pursuant to the Lease.

* * *

37. [Partners] failed to make timely and/or full payments as required by the Lease for forty-nine months. [Partners] provided no evidence to dispute [Rockside's] calculation.

* * *

39. [Partners] failed to remit the $18,998.20 owed to [Rockside] as of May 31, 2015, for outstanding rent excluding late fees and interest.

40. Nor did [Partners] remit $29,050.28 which was the full amount due as of May 31, 2015, for all rent inclusive of late fees and interest.

41. Therefore, [Partners] failed to pay monthly obligation amount in full as it came due for forty-nine months of the Lease, and accumulated arrears as result of its non-payment in violation the Lease.

42. Pursuant to the Lease, [Butler's] $60,000 personal guaranty is diminished by $1,000 for each month that payment is made pursuant to the Lease.

43. By way of explanation, the personal guaranty is capped at $60,000 and $1,000 of this cap is "burned off" for each month in which [Partners] remits all rental charges, including payment of base rent, late fees, interest, common area and maintenance charges, electric, storage, non-sufficient check fees, and work orders.

44. The personal guaranty cap does not reduce by $1,000 for months in which these payments were made after the ten-day grace period or when an outstanding balance remained due and owed.

45. Accordingly, there is sufficient credible evidence in the record which supports [Rockside's] calculation that [Butler's] personal guaranty cap is

only "burned off" by $11,000 because there were only 11 months of full and timely payments.

46. Thus, * * * the Court finds that [Butler's] personal guaranty is capped at $49,000.

47. [Rockside] satisfied its obligations under the Lease, and was therefore entitled to all rental charges, including base rent, late fees, interest, common area and maintenance charges, electric, storage, non-sufficient check fees, and work orders.

48. [Partners'] failure to make those payments as said payments came due at the first of the month was material breach of the Lease.

* * *

52. [Partners] presented no evidence to dispute the amount calculated by [Rockside] of the outstanding rent owed nor did [Partners] present evidence to dispute that its past payments were untimely.

53. In light of the foregoing, the total damages arising from [Partners'] breach of the Lease is $35,574.44 through June 20, 2015.

54. Accordingly, joint and several liability is rendered against [Partners] and [Butler] on [Rockside's] Complaint, in the amount of $35,574.44 plus interest from June 20, 2015 until paid in full, reasonable attorney fees to be determined, and court costs.

**{¶12}** Defendants now appeal, raising the following two assignments of error for review:

### Assignment of Error One

The trial court committed reversible error by ruling in favor of [Rockside] and against [Partners and Butler] regarding Butler's obligations under the "personal guaranty" in the commercial lease between Rockside and Partners, holding that, as a matter of law, Butler's "personal guaranty" exceeded $6,000, and that Butler was therefore jointly and severally liable for unpaid rent, other costs, and attorney fees.

<u>Assignment of Error Two</u>

The trial court committed reversible error by holding that [Rockside] proved its alleged damages with specificity.

<u>Personal Guaranty</u>

{¶13} In the first assignment of error, defendants argue the trial court erred as a matter of law when it found that, under the lease, Butler's personal obligation was reduced by only $11,000 to $49,000, and the personal guaranty cap was not reduced by $1,000 for months in which the payments were made after the ten-day grace period or when an outstanding balance remained due.

{¶14} The construction of a written contract is a matter of law that is reviewed de novo. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), at paragraph one of the syllabus; *B&G Properties Ltd. Partnership v. OfficeMax, Inc.*, 2013-Ohio-5255, 3 N.E.3d 774, ¶ 5 (8th Dist.), citing *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452. "Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement." *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992), citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 509 N.E.2d 411 (1987), paragraph_one of the syllabus; *Aultman Hosp. Assn. v. Community 104 Mut. Ins. Co.*, 46 Ohio St.3d 51, 544 N.E.2d 920 (1989), syllabus. Contracts are to be read as a whole, giving effect to every part of the agreement, and the intent of the parties is to be determined from the contract as

a whole.[4]  *London Guar. & Acc. Co. v. Empire Plow Co.*, 115 Ohio St. 684, 689, 155 N.E. 382 (1927).  "Common words appearing in a written instrument are to be given their plain and ordinary meaning unless manifest absurdity results or unless some other meaning is intended from the face or overall contents of the instrument."  (Citations omitted.)  *Alexander* at 245-246.  Indeed, the "court need not go beyond the plain language of the agreement to determine the parties' rights and obligations if a contract is clear and unambiguous."  *Maines* at 6, citing *Uebelacker v. Cincom, Inc.*, 48 Ohio App.3d 268, 271, 549 N.E.2d 1210 (1st Dist.1988); *McConnell v. Hunt Sports Ent.*, 132 Ohio App.3d 657, 725 N.E.2d 1193 (10th Dist.1999).

{¶15} Only when the language of a contract is ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning, will extrinsic evidence be considered in an effort to give effect to the parties' intentions.  *Kelly* at 132.  Extrinsic or parol evidence is "admissible to explain an ambiguity or uncertainty arising out of the terms of a written instrument."  *Suburban Ford Tractor Sales, Inc. v. Orlean Co.*, 8th Dist. Cuyahoga No. 33654, 1975 Ohio App. LEXIS 6167, 8 (Apr. 3, 1975).  However, "[w]hen the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not

---

[4]We note that "[c]ourts construe guaranty agreements in the same manner as they interpret contracts."  *Maines Paper & Food Serv., Inc. v. Eanes*, 8th Dist. Cuyahoga No. 77301, 2000 Ohio App. LEXIS 4480, at 5 (Sep. 28, 2000), citing *G.F. Business Equip. v. Liston*, 7 Ohio App.3d 223, 224, 454 N.E.2d 1358 (10th Dist.1982); *Stone v. Natl. City Bank*, 106 Ohio App.3d 212, 665 N.E.2d 746 (8th Dist.1995).

expressed in the clear language employed by the parties." *Shifrin* at 638, citing *Alexander* at 246.

**{¶16}** In interpreting the lease provisions, the trial court found:

34. Pursuant to Paragraphs 4 and 5 of the Lease, [Partners] was obligated to make full rental payments by the first of each calendar month. Full rental payments include all charges listed on each invoice including payment of base rent, late fees, interest, common area and maintenance charges, electric, storage, non-sufficient check fees, and work orders.

35. Thus, failure to pay the full amount due on each invoice by the first of each calendar month constitutes failure to pay rent pursuant to the Lease.

* * *

37. [Partners] failed to make timely and/or full payments as required by the Lease for forty-nine months. [Partners] provided no evidence to dispute [Rockside's] calculation.

* * *

42. Pursuant to the Lease, [Butler's] $60,000 personal guaranty is diminished by $1,000 for each month that payment is made pursuant to the Lease.

43. By way of explanation, the personal guaranty is capped at $60,000 and $1,000 of this cap is "burned off" for each month in which [Partners] remits all rental charges, including payment of base rent, late fees, interest, common area and maintenance charges, electric, storage, non-sufficient check fees, and work orders.

44. The personal guaranty cap does not reduce by $1,000 for months in which these payments were made after the ten-day grace period or when an outstanding balance remained due and owed.

45. Accordingly, there is sufficient credible evidence in the record which supports [Rockside's] calculation that [Butler's] personal guaranty cap is only "burned off" by $11,000 because there were only 11 months of full and timely payments.

46.   Thus, * * * the Court finds that [Butler's] personal guaranty is capped at $49,000.

{¶17} We disagree with the trial court's findings.  Rather, in our de novo review of the lease, we find, as a matter of law, that Butler's personal financial obligation was reduced by $1,000 for every rent payment, irrespective of the timeliness of the payment.

{¶18} A plain reading of the lease reveals, and Rockside concedes, that the lease differentiates between "rent" and "rent adjustments."  Paragraph 4(A), titled "Rent," sets forth the rent payment schedule and obligates Partners to pay rent on the first day of each calendar month.  In the event that rent is not paid within ten days of the due date, the lease provides a remedy for late payments — Partners is obligated to pay Rockside a 5 percent late fee, which Rockside describes as liquidated damages, and 12 percent interest per annum on the unpaid amounts.

{¶19} Paragraph 5(a), titled "Rent Adjustment," provides that in addition to the annual base rent stipulated in paragraph 4, Partners could be charged fees, equal to 1.14 percent of the annual rent payments, for real estate taxes, common area maintenance, and other maintenance expenses.  Paragraph 5(d) describes these items as "additional rent" and Paragraph 5(e) sets forth separate timing requirements for the payment of any additional rent, stating that it shall be made "on the first day of the payment of rent by [Partners] under this Lease Agreement[.]"  This additional rent is further distinguished from the rent defined in paragraph 4(A) by providing that if the additional rent (the real estate taxes and common area maintenance expenses) decreases, Partners is entitled to a

credit against the rent next becoming due. Paragraph 5(f) provides a separate mechanism for any disputes included by Rockside in determining the real estate taxes and common area maintenance expenses by referring the matter to an independent, reputable firm of certified public accountants.

{¶20} With regard to the guaranty, the lease provides that Butler

hereby guarantees the payment of the rent to be paid by [Partners] and the performance by [Partners] of all the terms, conditions, covenants and agreements of the Lease the same as if the undersigned had executed this Lease as [Partners]. This personal guaranty shall be limited to payment of $60,000, which amount shall decrease by $1,000 for every month that [Partners] makes payment of rent under this Lease (by way of illustration, once 12 months of rent payments have been made the amount remaining on the guaranty shall be $48,000).

{¶21} A plain reading of the guaranty reveals that Butler guaranteed the payment of rent and the performance of all the terms and conditions of the lease. The guaranty limited Butler's personal financial obligation to $60,000. The guaranty also established a mechanism to reduce the amount of Butler's financial obligation by providing that it "shall decrease by $1,000 for every month that [Partners] makes payment of rent." The guaranty even provides an illustration describing how the deduction shall be applied. It states, "by way of illustration, once 12 months of rent payments have been made the amount remaining on the personal guaranty shall be $48,000."

{¶22} The guaranty, however, does not define "rent," and the guaranty's reduction mechanism does not explicitly include timing requirements with respect to the rent payments. Furthermore, the guaranty does not make reference to the payment of

"additional rent," and does not explicitly state that its reduction mechanism is dependent on the payment of both "rent" and "additional rent." Thus, a plain reading of the guaranty's reduction mechanism requires only the payment of "rent." The guaranty's reduction mechanism also does not require the payment of late fees, which are defined by the lease as "liquidated damages," or collateral charges, which are defined by the lease as "additional rent." The lease provides a separate remedy for untimely payments of rent and additional rent.

{¶23} Here, Rockside's own accounting confirms that Partners paid a total of $312,015.11. Of that amount, Rockside made at least 54 allocations to "Office Rent Payment" in the amounts set forth in the Lease. By Rockside's own accounting, Butler's personal financial obligation under the guaranty should be reduced to $6,000. The trial court erred as a matter of law when it determined that Partners's rent payments were ineffective in reducing Butler's financial obligation if they were not timely, or if the rent payments did not also include late fees, interest payments, real estate tax payments, and common area maintenance fees because the guaranty's reduction mechanism does not expressly include those other obligations, which are beyond the stated definition of "rent." Therefore, the trial court erred in interpreting the guaranty to find that Partners made only 11 qualifying "rent" payments, and that Butler's personal obligation under the guaranty was reduced only to $49,000.

{¶24} Accordingly, the first assignment of error is sustained.

### Damages

**{¶25}** In the second assignment of error, defendants argue that Rockside did not prove its damages award of $35,574.44 with reasonable certainty. Specifically, they argue that Rockside failed because it presented differing damages calculations at trial ($33,554.49 and $29,050.28), and insisted that these calculations were accurate.

**{¶26}** In reviewing the trial court's decision to award $35,574.44 in damages, we apply the standard that judgments supported by competent, credible evidence in the record must not be reversed unless they are against the manifest weight of the evidence. *Povroznik v. Mowinski Builders, Inc.*, 8th Dist. Cuyahoga No. 93225, 2010-Ohio-1669, ¶ 13, citing *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). "In addition, we give deference to the trial court's findings." *Id.*, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 (1984). We are also mindful that the general principle in determining contract damages is to place the injured party in as good of a position as it would have been but for the breach. *Schulke Radio Prods., Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 439, 453 N.E.2d 683 (1983), citing *West, Weir & Bartel, Inc. v. Mary Carter Paint Co.*, 25 A.D.2d 81, 267 N.Y.S.2d 29 (1966).

**{¶27}** Under Ohio law, a plaintiff seeking to recover for breach of contract must show damages as a result of the breach. *Povroznik* at ¶ 13, citing *On Line Logistics, Inc. v Amerisource Corp.*, 8th Dist. Cuyahoga No. 82056, 2003-Ohio-5381. "As to the amount of damages, only a reasonable certainty is required, which has been defined as 'that degree of certainty of which the nature of the case admits.'" *Fiorilli Constr., Inc. v.*

*A. Bonamase Contr., Inc.*, 8th Dist. Cuyahoga No. 94719, 2011-Ohio-107, ¶ 36, quoting *Bemmes v. Pub. Emps. Retirement Sys.*, 102 Ohio App.3d 782, 658 N.E.2d 31 (12th Dist.1995); *Gateway Consultants Group, Inc. v. Premier Physicians Ctrs., Inc.*, 8th Dist. Cuyahoga No. 104014, 2017-Ohio-1443.

**{¶28}** In the instant case, the evidence presented at trial demonstrates that Rockside had different accountings of damages based on a May 2015 meeting with Butler. Mitchell testified that after the May 2015 meeting, she created two charts to summarize the information presented on the tenant ledger and to demonstrate the amount of outstanding rental payments with and without late fees and interest. Mitchell further testified that there were varying calculations because in an attempt to resolve the dispute, Rockside recalculated interest and late fees in a method more favorable to Partners. Mitchell testified that the amount of $29,050.28 included the adjusted late fees. The amount of $33,554.49 reflects the amount of all payments that were due at the end of the lease, including late fees and interest up to the start of trial.

**{¶29}** While the defendants argue that Rockside failed to meet its burden in proving damages, defendants have not offered any evidence demonstrating that Rockside's calculations are incorrect. The defendants do not dispute the amount owed, rather they assert that Rockside's damages must be incorrect because it offered different accountings at different times. Accordingly, there is sufficient, credible evidence in the record that supports Rockside's assessment of damages, including late fees and interest, with reasonable certainty.

**{¶30}** Therefore, the second assignment of error is overruled.

**{¶31}** Judgment with regard to the total amount of damages ($35,574.44) is affirmed. The trial court's judgment finding that Butler's personal guaranty is capped at $49,000 is reversed, and the matter is remanded with instructions for the trial court to enter judgment that Butler's personal guaranty is capped at $6,000.

**{¶32}** Judgment affirmed in part, reversed in part, and remanded.

It is ordered that appellee and appellants share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

EILEEN A. GALLAGHER, A.J., and
ANITA LASTER MAYS, J., CONCUR